UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BRET JOHNSON, | } | |
| | } | |
| Plaintiff, | } | |
| VS. | } | CIVIL ACTION NO. G-06-764 |
| | } | |
| H. GRAVES, *et al*, | } | |
| | } | |
| Defendants. | } | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 18) and Plaintiff's Response thereto (Doc. 24). For the reasons outlined below, the Motion is **GRANTED**.

## I. Background

Plaintiff Bret Johnson brings this case pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. He alleges that he was detained without reasonable suspicion, arrested without probable cause, and subjected to excessive force by two police officers of the City of Galveston.[1] Defendants, Officer Graves and Sergeant Frankland, argue that they are entitled to qualified immunity on all of Plaintiff's claims.

The events that form the basis of this lawsuit began on December 5, 2004. (Doc. 18, Ex. A.) On that day, Plaintiff Bret Johnson ("Johnson") and his wife, Patricia, arrived at their home to find the body of their son, Byron, on the floor of his room. *Id.* There was something tied around Byron's neck, and it appeared that he had attempted suicide. *Id.* Patricia quickly called 911, and a team of ambulance, fire, and police department personnel was dispatched to the Johnsons' house. (Doc. 18, Exs. A and C.) The team was originally dispatched

---

[1] Plaintiff originally asserted claims against three officers, but he has since dismissed the claims against one of the officers.

to the wrong address.  (Doc. 18.)  By the time they arrived at the Johnson home, Johnson was

upset because he felt they were taking too long to arrive.  (Doc. 18, Ex. A.)

Officer Joseph Millo was the first person to arrive at the home.  *Id.*  He spoke

with Patricia, who directed him into the bedroom where Byron was lying on the floor.  (Doc. 18,

Ex. B.)  When Officer Millo arrived, Johnson was kneeling over his son attempting to revive him

with CPR.  (Doc. 18, Ex. A.)   Next, Officer Graves arrived, and he and Officer Millo began to

move items in the bedroom that were obstructing the entrance so that EMS personnel would be

able to work in the space effectively.  (Doc. 18, Ex. D.)  When EMS arrived, Patricia and

Officers Graves and Millo told Johnson to move out of the way so that EMS could help Byron.

(Doc. 18, Exs. A, B, and D.)  Instead of getting up and moving out of the way, Johnson remained

kneeling and turned around to give his wife a hug.  (Doc. 18, Ex. A.)

While Johnson remained kneeling, Patricia attempted to bring him to his feet and

move him out of the way.  (Doc. 18, Ex. B.)  Officer Graves approached Johnson, placed his

hand on Johnson's back, and attempted to direct him out of the room.  (Doc. 18, Exs. B, C, D,

and E.)  Officer Graves claims that Johnson then spun towards him and used his shoulder to pin

Officer Graves against the wall.  Johnson claims that Officer Graves grabbed him from behind

and pinned him against the wall.  (Doc. 18, Ex. A.)  Patricia, the only other eyewitness, states

that Johnson stood up, and Officer Graves shoved Johnson through the door.  (Doc. 18, Ex. B.)

Johnson states that while he was moving towards the door, he was hit in the head with a pair of

handcuffs.  (Doc. 18, Ex. A)  While there are slight differences in the witnesses' accounts of the

exact details regarding Officer Graves's initial encounter with Johnson, it is clear that there was a

minor physical altercation between Johnson and Officer Graves while Officer Graves attempted

to remove Johnson from the room in which Byron was lying on the floor.

When Officer Millo noticed that Johnson and Officer Graves were involved in a struggle, he went over to assist Officer Graves.  (Doc. 18, Ex. F.)  Sergeant Frankland also responded and pulled Johnson away from Officer Graves.  (Doc. 18, Ex. C.)  Officer Millo and Sergeant Frankland then escorted Johnson into an adjoining living room.  (Doc. 18, Ex. F.)  As they escorted Johnson from the room, he resisted the move and was attempting to re-enter the bedroom.  (Doc. 18, Exs. A and C.)  Sergeant Frankland decided to take Johnson to the ground in order to prevent him from re-entering, and when he did, they both fell to the floor.  (Doc. 18, Exs. A and C.)  Johnson hit his forehead on the floor when he fell down.  (Doc. 18, Exs. C and E.)   Johnson claims that while he was on his back, he was hit repeatedly with something he thinks may have been a flashlight.  (Doc. 18, Ex. A.)  Johnson continued to thrash around, but he was ultimately handcuffed and escorted to the back seat of a police vehicle that was parked in front of the Johnson house.  (Doc. 18, Exs. A, D, and F.)

EMS transported Byron to the hospital, and Johnson began to calm down.  (Doc. 18, Ex. C.)  Sergeant Frankland released Johnson so that he could be with his wife.  Another officer drove Johnson to the hospital, where Johnson ultimately found out that Byron was deceased.  (Doc. 18, Ex. A.)  Johnson never sought medical attention.  *Id.*

After the incident was over, Officer Graves requested a warrant for Johnson's arrest.  (Doc. 18, Ex. G.)  The warrant was issued, and Johnson was asked to surrender himself.  (Doc. 18, Ex. A.)  Johnson did not surrender, but he was later arrested after being stopped for a traffic violation.  *Id.*  All criminal charges against Johnson were ultimately dropped.  *Id.*

## II.  Legal Standard

### A.  Summary Judgment Standard

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  "The underlying facts must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B.  Qualified Immunity Standard

Government officials, including all of the defendants, are entitled to immunity from civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known.  *See Anderson v. Creighton*, 483 U.S. 653, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).  The threshold issue in a qualified immunity analysis is whether an official's conduct violated a constitutional right, based upon the facts alleged and taken in the light most favorable to the party asserting the injury.  *See Saucier v. Katz*, 553 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  If no constitutional right was violated, the court need inquire no further.  *Id.*  If, however, a constitutional violation occurred, the second inquiry is whether the official could nevertheless reasonably but mistakenly

have believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 206.

## III.  Analysis

### A.  Unlawful Detention

Johnson's first claim is for unlawful detention, and is based on his detention at the scene on December 5, 2004.  On that date, Johnson was temporarily detained in a police vehicle before being released.  In order to make a § 1983 claim for unlawful detention, a plaintiff must show that there was no legal justification for the detention. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).  The standard of evidence required for this type of detention and release is governed by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968) and its progeny.  "Pursuant to *Terry*, . . . police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (2000).

Texas law makes it a criminal offense to interfere with the provision of medical care by emergency medical services. *See* TEX. PENAL CODE § 38.15(a)(2).  In this case, the officers at the scene had more than a reasonable suspicion that Johnson was interfering with the provision of emergency medical care to Byron.  Specifically, Johnson was trying to enter a room in which he had been physically impeding the ability of personnel to render the required aid.  Given Johnson's emotional state and physical struggle with the officers, it was reasonable for the officers to believe that the detention was required in order to keep Johnson from continuing his interference.  This reasonable suspicion was sufficient to justify Johnson's temporary detention.

It is also a criminal offense to resist arrest, search, or transportation, even if the arrest is unlawful. *See* TEX. PENAL CODE § 38.03.  Johnson admits that he was resisting the

officers' attempts to transport him to another room and that he was trying to return to the bedroom. This is sufficient to provide the officers with a reasonable suspicion as the basis for Johnson's detention.

While the higher standard of probable cause is not required for a temporary detention, the Court finds that the officers would have had probable cause if they had actually arrested Johnson. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Prior to his detention, the officers actually witnessed Johnson resisting transportation and interfering with public duties. This is confirmed by several of the eyewitnesses, and is even conceded by Johnson. This is sufficient to establish probable cause.

### B. Excessive Force

In order to make a claim for excessive force pursuant to § 1983 and the Fourth Amendment, as is asserted by Plaintiff in this case, a plaintiff must show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994)). While significant injury is not required, the injury must be more than *de minimus*. *See id.* To determine the reasonableness of a defendant's actions, the court pays "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* at 753 (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)).

Johnson alleges an injury to his left eye, his right ear, his upper back, his shoulder, and his right wrist.  The only injuries that Johnson presents evidence of are those to his eye and ear, which appear to be very small scrapes or cuts.  Johnson's summary judgment response mentions the other injuries but does not offer any evidence of them.  Other than a small bandage over Johnson's eyebrow, there is no evidence that he received medical treatment for his injuries.  The Court questions whether these injuries even satisfy the requirement that the plaintiff suffer more than a *de minimus* injury, but out of an abundance of caution and for the sake of thoroughness, will assume that they do.

Plaintiff's claim for excessive force fails because the force used was not excessive or unreasonable under the circumstances.   In this case, the emergency personnel were exclusively focused on administering care to Byron.  When Johnson was reasonably perceived as hindering the ability to provide care, the officers at the scene used the force necessary to remove Johnson from the scene and temporarily detain him.  The situation at the Johnson home was very different from most cases that result in excessive force litigation, which typically involve a crime in progress or a suspected criminal fleeing a scene.  While the Johnsons' situation was far more tragic, it is still amenable to the same legal analysis.  Johnson alleges that he was wrestled to the ground, and he thinks he was hit in the face with handcuffs and in the back with a flashlight.  However, no other witness supports the claim that he was hit with handcuffs or a flashlight, and his injuries indicate that if he were hit with these objects, it was either inadvertently or very lightly.  The immediate and serious threat to Byron's life justified the relatively low level of force used by the police officers in detaining Johnson.   Accordingly, Johnson's claim for excessive force is **DISMISSED WITH PREJUDICE**.

### C.  Wrongful Arrest

Johnson has also filed § 1983 claims for wrongful arrest in violation of the Fourth Amendment based on his arrest during a traffic stop in March 2005, about three months after Byron's death.  The arrest was made pursuant to a warrant issued by a Galveston County Magistrate after being presented with information from Officer Graves and Sergeant Frankland.

"If facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."  *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (citing *Wheeler v. Cosden Oil & Chemical Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984)); *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984), *cert. denied*, 472 U.S. 1017, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985).  This is true even when an officer acts with malice in procuring the warrant as long as "the malicious motive of the officer does not lead him to withhold any relevant information." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).  There is no evidence here that Officer Graves and Sergeant Frankland acted with any malicious intent or that they withheld any information from the Magistrate who issued the warrant.  Accordingly, the chain of causation was broken and Officer Graves and Sergeant Frankland cannot be held liable for wrongful arrest, Those claims are **DISMISSED WITH PREJUDICE**.

Even though the chain of causation issue moots any issue of probable cause, the Court noted above that the Officers would have had probable cause to arrest Johnson on the day of Byron's death.  Since there were no intervening facts between the date of the incident and the time of arrest, the arrest did not violate Johnson's constitutional rights.

**IV.  Conclusion**

Since Defendants' actions in this case did not violate any of Plaintiff's constitutional rights, they are entitled to qualified immunity on all of Plaintiff's claims. Accordingly, all claims asserted by Plaintiff against Defendants in this action are **DISMISSED WITH PREJUDICE**.  A Final Judgment will be issued with this Order.

SIGNED at Houston, Texas, this 21st day of May, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE